**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

XIAOJIAN GE,

       Petitioner,

v.                                                                                    Civ. No. 26-48 JB/GJF

GEORGE DEDOS, Warden, Torrance
County Detention Center; MARY DE
ANDA-YBARRA, Acting El Paso Field
Office Director, U.S. Immigration and
Customs Enforcement; MARKWAYNE
MULLIN, Secretary of the U.S. Department
of Homeland Security; and TODD
BLANCHE, Acting Attorney General of
the United States, in their official capacities,

       Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON FIRST AMENDED
PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 20), MOTION TO DISMISS
FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 21),
PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1), AND MOTION TO
DISMISS PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 8)[1]**

THIS MATTER is before the Court on the *Petition for Writ of Habeas Corpus* (Dkt. No.
1) ("Petition") and the *First Amended Petition for Writ of Habeas Corpus* (Dkt. No. 20)
("Amended Petition") filed by Petitioner Xiaojian Ge ("Petitioner" or "Petitioner"). Petitioner,
who is subject to a final order of removal, seeks release from his prolonged detention under the
Due Process Clause and *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Federal Respondents, Mary
De Anda-Ybarra, Markwayne Mullin, and Todd Blanche, filed a *Motion to Dismiss Petition for
Writ of Habeas Corpus* (Dkt. No. 8) ("Motion to Dismiss Petition") and *Motion to Dismiss
Petitioner's First Amended Petition for Writ of Habeas Corpus* (Dkt. No. 21) ("Motion to Dismiss

---

[1] The undersigned files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding
judge's Order of Reference (Dkt. No. 3).

Amended Petition"). Respondent George Dedos has not filed a response to either the Petition or the Amended Petition, but the Federal Respondents represented that all their arguments apply with equal force to the Warden. *See* Mot. to Dismiss Pet. 1 n.1, Dkt. No. 8. Hereinafter, the Court will refer to them collectively as "Respondents."

This matter initially came to the Court on the Petition. After Respondents filed their Motion to Dismiss Petition, Petitioner responded in opposition to that motion. Resp., Dkt. No. 9. This Court set the matter for an evidentiary hearing. Order, Dkt. No. 13. Prior to the hearing, Respondents lodged additional evidence, including two videos showing Petitioner intentionally slamming his arm into a door on March 23, 2026, causing him to miss his scheduled removal flight to China. *See* Gov.'s Ex. 1 & 2, Dkt. No. 14 ("Videos"); Trujillo Decl. ¶¶ 27-29, Dkt. No. 15-1. The Court ordered the parties to inform the Court whether it should vacate the hearing, whether it could decide the Petition on the then-current record, and whether Petitioner wished to amend or withdraw his habeas corpus petition. Order, Dkt. No. 16. In response, Petitioner asked the Court to vacate the evidentiary hearing and allow a reasonable opportunity to amend his Petition. Notice, Dkt. No. 17. The Court granted the requests. Order, Dkt. No. 19.

On April 15, 2026, Petitioner filed his Amended Petition. Am. Pet., Dkt. No. 20. The filing of the Amended Petition superseded the Petition, and thus the original Petition should be denied as moot. *See Washer v. Bullitt County*, 110 U.S. 558, 562 (1884) ("When a petition is amended by leave of the court, the cause proceeds on the amended petition."); *Burkhalter v. Patton*, No. 14-CV-685-JED-FHM, 2015 WL 4387974, at *1 (N.D. Okla. July 15, 2015) ("Because the amended petition replaces and supersedes the original petition, the original petition shall be declared moot."). Respondents filed their Motion to Dismiss Amended Petition on April 29, 2026. Mot. to Dismiss Am. Pet., Dkt. No. 21. Petitioner did not respond to the Motion to Dismiss Amended

Petition and the deadline for doing so has expired. This matter is ready for decision. Based on the record and material uncontested facts, the Court finds that an evidentiary hearing is not necessary.

Having reviewed the Petition, the Motion to Dismiss Petition, the Amended Petition, the Motion to Dismiss Amended Petition, the evidence, the law, and the arguments of counsel, the Court recommends that the Petition and Motion to Dismiss Petition be denied as moot, the Motion to Dismiss Amended Petition be granted, and the Amended Petition be denied on the merits.

## I.    FACTUAL BACKGROUND

Petitioner Xiaojian Ge is a national and citizen of the People's Republic of China. Am. Petition ¶ 1, 20, Dkt. No. 20; Shaw Decl. ¶ 5, Dkt. No. 8-1. Petitioner was admitted to and entered the United States in 2009. *See* Am. Petition ¶ 20, Dkt. No. 20; Shaw Decl. ¶ 5, Dkt. No. 8-1.[2]

On April 16, 2012, Petitioner was convicted in federal court in the Southern District of Florida for trafficking in counterfeit goods in violation of 8 U.S.C. § 2320(a)(1). Am. Pet. ¶ 21, Dkt. No. 20; Pet'r's Ex. 1, Dkt. No. 1-2.[3] He received a time-served sentence, a $1,000 fine, and three years of supervised release. Pet'r's Ex. 1, Dkt. No. 1-2. Following the completion of his supervised release, on November 21, 2012, Petitioner was served with a Notice to Appear and placed in removal proceedings. *See* Am. Pet. ¶ 21, Dkt. No. 20; Shaw Decl. ¶ 9, Dkt. No. 8-1. He filed for asylum. *See* Am. Pet. ¶ 21, Dkt. No. 20. On February 13, 2017, an immigration judge denied his application for asylum, and he was ordered removed to China. Am. Pet. ¶ 21, Dkt. No. 20; Pet'r's Ex. 2, Dkt. No. 1-3 at 2; Shaw Decl. ¶ 10, Dkt. No. 8-1. He appealed to the Board of

---

[2] Although the parties dispute Petitioner's status at entry, the Court need not resolve this factual dispute because it is not relevant to the issues before it.

[3] Respondents stated that he was convicted of trafficking in counterfeit goods in excess of one million dollars. Mot. to Dismiss Am. Pet. 2, Dkt. No. 21. Petitioner disputes this fact, asserting his conviction was under § 2320(a)(1), which does not require a specific amount of monetary loss. Reply 4, Dkt. No. 9. The Court need not resolve this factual question because it too is immaterial to the legal issues raised in the Amended Petition and motion to dismiss.

Immigration Appeals ("BIA"), which denied his appeal on March 27, 2018. Am. Pet. ¶ 21, Dkt. No. 20; Pet'r's Ex. 2, Dkt. No. 1-3 at 3; Shaw Decl. ¶¶ 11-12, Dkt. No. 8-1.

Since 2014, Petitioner lived in Florida with his wife and children. Am. Pet. ¶ 22, Dkt. No. 20; Pet'r's Ex. 4, Dkt. No. 1-4; Ge Decl. ¶ 3, Dkt. No. 9-1. On July 8, 2025, Immigration and Customs Enforcement ("ICE") agents arrested Petitioner. *See* Am. Pet., ¶¶ 15, 23, Dkt. No. 20; Shaw Decl. ¶¶ 4, 13, Dkt. No. 8-1. Petitioner was initially taken to the immigration detention facility in Florida known as "Alligator Alcatraz." Am. Pet. ¶ 23, Dkt. No. 1. Following numerous transfers, he was moved to Torrance County Detention Facility in New Mexico, where he was held at the time he filed his initial Petition. Pet. ¶ 24, Dkt. No. 1; Am. Pet. ¶ 24, Dkt. No. 20; Shaw Decl. ¶ 3, Dkt. No. 8-1.

On September 18, 2025, Petitioner was asked for travel documents to facilitate his return to China. Shaw Decl. ¶ 14, Dkt. No. 8-1.[4] On December 5, 2025, the travel document package was sent to the Chinese attache. *Id.* ¶ 19. On March 9, 2026, ICE obtained a Permit for Entry issued by the Embassy of the People's Republic of China, permitting Petitioner's return to China within a three-month period from the date of its issuance. *See* Gov.'s Ex. 2, Dkt. No. 21-2; Sanchez Decl. ¶ 9, Dkt. No. 21-1; Trujillo Decl. ¶ 23, Dkt. No. 15-1.

Petitioner was scheduled on a charter flight for removal to China. Trujillo Decl. ¶ 24, Dkt. No. 15-1. Due to diplomatic relations and limited flight availability, scheduling DHS flights to China is rare and difficult. *Id.* ¶ 31. On March 23, 2026, Petitioner, who was then detained in

---

[4] Another factual dispute arises at this point in the narrative. According to Respondents, Petitioner refused to fill out the required documentation and to comply with filling out the travel document request. *See* Shaw Decl. ¶¶ 14-18, Dkt. No. 8-1. On the other hand, Petitioner avers that he does not understand, speak, or write English very well, and he needs someone to translate legal or complex documents. Ge Decl. ¶ 7, Dkt. No. 9-1. Although ICE officers approached him several times to try to get him to sign documents, they never had a Mandarin interpreter translate the documents. *Id.* ¶ 8. Petitioner informed them he would sign documents explained by his attorney. *Id.* Although these facts were relevant to the initial Petition, the Court recommends finding that changed circumstances have rendered them not essential to resolve the issues set forth in the Amended Petition based on the uncontested facts surrounding Respondents' subsequent receipt of travel documentation and their attempts to remove Petitioner three separate times.

Louisiana, intentionally and repeatedly slammed his arm in a door at a detention facility, with the resulting injuries preventing him from boarding his flight to China and his removal from the United States. *See* Videos, Dkt. No. 14; Trujillo Decl. ¶¶ 27-29, Dkt. No. 15-1.

ERO New Orleans transferred Petitioner to El Paso, Texas. Trujillo Decl. ¶ 30, Dkt. No. 15-1. On April 13, 2026, ERO El Paso attempted to remove Petitioner a second time to China via a commercial air flight, but Petitioner refused to proceed inside the El Paso International Airport for check-in, again preventing his removal from the United States. Sanchez Decl. ¶ 9, Dkt. No. 21-1. Three days later, ERO El Paso tried to remove Petitioner a third time to China via another commercial air flight. *Id.* ¶ 12. Escorting officers attempted multiple times to explain and advise Petitioner of his immigration and removal process to China using Mandarin interpreter language services via phone. *Id.* Petitioner refused to exit the transport van and said he would not go inside the airport, which again thwarted his removal. *Id.* He is currently admitted to Rio Vista Behavioral Health in El Paso. *Id.* ¶ 5. Petitioner is pending removal to China and ERO El Paso is preparing travel arrangements for a fourth removal attempt to China. *Id.* ¶ 15. Petitioner's temporary travel document expires in June, so if he is not removed in June, his detention will be extended while ERO repeats the process of obtaining the necessary travel documents from China. *Id.* ¶ 17.

## II.    PROCEDURAL HISTORY

On January 9, 2026, Petitioner filed his Petition under 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure Act ("APA"), and the All Writs Act, 28 U.S.C. § 1651. *See* Pet. ¶¶ 7-10, Dkt. No. 1. His Petition contains one count for unlawful prolonged detention in violation of his substantive due process rights based on *Zadvydas*. *Id.* ¶¶ 36-39.

Respondents filed their Motion to Dismiss Petition on February 10, 2026. They raise five main arguments: (1) Petitioner failed to exhaust administrative remedies under § 241.13 procedures; (2) 8 U.S.C. § 1252(g) and § 1252(b)(9) strip this Court of jurisdiction over the Petition challenging the execution of his removal order; (3) § 706(2)(A) and § 1252(a)(2)(B)(ii) strip this Court of jurisdiction to review his APA claim; (4) Petitioner has not met his burden to show unconstitutionally prolonged detention, as he has not shown good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future; and (5) the Court should not order immediate release or his other requested remedies. Mot. to Dismiss Pet., Dkt. No. 8. Petitioner responded to the motion, asserting that he cooperated with ICE requests to obtain travel documents, that Respondents never conducted the requisite custody review or provided him with the required notice or process outlined in 8 C.F.R. § 241.4, and that this Court has jurisdiction. *See* Resp., Dkt. No. 9.

In the Amended Petition, Petitioner asserts two claims for relief. Am. Pet. ¶¶ 46-52, Dkt. No. 20. He again brings a claim for unlawful prolonged detention under *Zadvydas*. *Id.* ¶¶ 46-49. Petitioner, who has now been detained for over nine months, argues that his detention exceeds the presumptive six-month reasonable period of time to effect his removal. *Id.* ¶¶ 41-49. He asserts he is neither a flight risk nor danger to the community and should be released because there is no significant likelihood of legitimate, lawful removal in the near future. *See id.* ¶¶ 25, 48. Petitioner added to his Amended Petition a claim for violation of due process under the Fifth Amendment based on Respondents' refusal to provide Petitioner or counsel evidence of authorization or travel documentation from the Chinese government that would lawfully allow his entry back into China. *Id.* ¶¶ 40, 50-52. He suggests that Respondents do not possess legitimate travel documents for him to return to China with the permission of the Chinese government. *Id.* ¶¶ 51-52. According to

Petitioner, Respondents' continued refusal to provide the documentation and their inability to remove him in a lawful manner violates his due process rights. *Id.*

Respondents moved to dismiss the Amended Petition. Mot. to Dismiss Am. Pet., Dkt. No. 21. Their brief raises the same legal arguments as in their original motion to dismiss, although they updated the facts and incorporated those updates into their legal arguments. *See id.* Petitioner did not file a response.

### III.    LEGAL BACKGROUND

When an immigration judge decides that a noncitizen is inadmissible or deportable and not entitled to any of the relief or protection that he requested, the immigration judge will issue an order of removal. *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U. S. C. § 1229a(c)(5)). When the removal order becomes final, the noncitizen's detention shifts to 8 U.S.C. § 1231. *See id.*

### A.  Section 1231 of the Immigration and Nationality Act

The Immigration and Nationality Act ("INA") requires the Government to remove a noncitizen subject to a final order of removal within 90 days from the date the removal order becomes administratively final. 8 U.S.C. § 1231(a)(1)(A). It becomes "administratively final" when the order has been affirmed by the BIA or the time for seeking review has expired, whichever is earlier. *See* 8 U.S.C. § 1101(a)(47)(B); *Riley v. Bondi*, 606 U.S. 259, 267 (2025). During the removal period, detention is mandatory. *See* 8 U.S.C. § 1231(a)(2)(A).

At the end of 90 days, the noncitizen's detention may continue where the Attorney General determines the alien "to be a risk to the community or unlikely to comply with the order of removal." *Id.* § 1231(a)(6). "The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make

timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* § 1231(a)(1)(C).

### B.  Due Process Clause and *Zadvydas*

The Fifth Amendment's Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Immigration proceedings are civil in nature, and as such, the Government's interests are non-punitive, such as ensuring the appearance of an alien at future immigration proceedings and protecting the community from danger. *Id.* "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

In *Zadvydas*, the Supreme Court considered whether § 1231(a)(6) authorized the Attorney General to detain a removable alien, who was previously admitted to the United States but subsequently ordered removed, *indefinitely* beyond the 90-day statutory removal period. *Id.* at 682. The Supreme Court reasoned that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. To avoid that problem, the court construed the ambiguous statute to contain an implicit "reasonable time" limitation, such that an alien may only be detained for a period reasonably necessary to secure the alien's removal. *Id.* at 682, 699. Once removal is not reasonably foreseeable, continued detention is unreasonable and no longer authorized by statute. *Id.* at 699-700.

Continued detention for six months is "presumptively reasonable." *Id.* at 701. But after six months, if the noncitizen "provides good reason to believe that there is no significant likelihood

of removal in the reasonably foreseeable future," the Government must then respond with sufficient evidence to rebut the noncitizen's showing. *Id.* Given a sufficient showing by the Government, the noncitizen may be confined "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

### C.  Section 241 regulations

Before the removal period expires, the immigration agency shall conduct a custody review for an alien whose removal cannot be accomplished during the usual removal period. 8 C.F.R. § 241.4(k)(1)(i). After the removal period, further custody determinations are made by "the Executive Associate Commissioner, acting through the [Headquarters Post-order Detention Unit (HQPDU)]." *Id.* § 241.4(c)(2). A copy of the decision to detain the alien shall be provided to the alien with reasons for the continued detention. *Id.* § 241.4(d). The alien is entitled to service of all notices, decisions, and documents in connection with custody reviews. *See id.* § 241.4(d)(1)-(3).

In making a custody determination, HQPDU must consider the ability to obtain a travel document for the alien. *See* 8 C.F.R. § 241.4(g)(3). The agency must take "appropriate steps to secure travel documents for the alien both before and after the expiration of the removal period." *Id.* § 241.4(g)(2). If it is established that travel documents can be obtained for the alien, or they are forthcoming, "the alien will not be released unless immediate removal is not practicable or in the public interest." *Id.* § 241.4(g)(3).

If an alien "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal," then the 90-day removal period shall be extended. *Id.* § 241.4(g)(1)(ii). *See also* 8 C.F.R. § 241.4(g)(5)(i) ("Release will be denied and the alien may remain in detention if the alien fails or refuses to make timely application in good faith for travel

9

documents necessary to the alien's departure or conspires or acts to prevent the alien's removal.").

Section 241.4(g)(1)(ii) further explains:

> The Service will provide such an alien with a Notice of Failure to Comply, as provided in paragraph (g)(5) of this section, before the expiration of the removal period. The removal period shall be extended until the alien demonstrates to the Service that he or she has complied with the statutory obligations. Once the alien has complied with his or her obligations under the law, the Service shall have a reasonable period of time in order to effect the alien's removal.

*Id.* The Service's failure to provide the requisite Notice of Failure to Comply within the 90-day removal period "shall not have the effect of excusing the alien's conduct." *Id.* § 241.4(g)(5)(iv).

After *Zadvydas*, the Attorney General issued regulations to implement administrative custody review procedures for aliens with final orders of removal who are detained beyond the expiration of the removal period. *See* 8 C.F.R. § 241.13(a). Review occurs for such aliens when "the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." *Id.* HQPDU continues the custody of such aliens while pursuing the procedures to determine the likelihood of removal. *Id.* § 241.13(b)(2)(i). It has no obligation to release an alien until it "has had the opportunity during a six-month period … to make its determination as to whether there is a significant likelihood of removal in the reasonably foreseeable future." *Id.* § 241.13(b)(2)(ii).

An alien may submit a written request for release to the HQPDU. *Id.* § 241.13(d)(1). The alien must include with his written submission sufficient information to establish his "compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." *Id.* § 241.13(d)(2). HQPDU must respond in writing, with a copy to counsel, acknowledging receipt and explaining the procedures for evaluating the request. *Id.* § 241.13(e)(1). It must issue a written decision based on the administrative record. 8 C.F.R. §

241.13(g). If HQPDU decides there is a significant chance of removal in the reasonably foreseeable future, it shall deny the request for release and so advise the alien. *Id.* § 241.13(g)(2). There is no administrative appeal from HQPDU's decision to deny an alien's request. *Id.*

## IV.    ANALYSIS

### A.  Court has jurisdiction to review Petition and Amended Petition.

A court may issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88). District courts are authorized to entertain petitions for habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). Because Petitioner was confined within this district at the time he filed the Petition and he named his immediate custodian, this Court properly exercises habeas jurisdiction under 28 U.S.C. § 2241. *Cf. Ex parte Endo*, 323 U.S. 283, 304-06 (1944) (holding that district court acquired jurisdiction of habeas case filed in district where petitioner was then located, and court did not lose jurisdiction when petitioner was transferred to another state where person in whose custody petitioner is remains within district); *Pinson v. Berkebile*, 604 F. App'x 649, 652–53 (10th Cir. Mar. 10, 2015) (holding that "District of Colorado acquired jurisdiction when [petitioner] filed his habeas petition" while he was held in Colorado and his transfer to another state "does not defeat that initial jurisdiction") (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 440–41 (2004)).

Nevertheless, Respondents argue that § 1252(g) and § 1252(b)(9) bar jurisdiction to review Petitioner's claims. Section 1252(g) provides:

> [N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, *or execute removal orders* against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). Petitioner contends this provision does not bar his constitutional challenges to the length and legality of his detention and DHS's failure to follow mandatory regulations. *See* Resp. 9-14, Dkt. No. 9.

The Supreme Court instructed that § 1252(g) narrowly applies to only three specific actions – the decision or action to commence proceedings, adjudicate cases, or execute removal orders. *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999). As Petitioner points out, he is not asking the Court to second-guess Respondents' discretionary decision to commence removal proceedings against him, to adjudicate the case, or to execute the removal order. Rather, he is challenging a separate matter – whether he may continue to be detained past the 6-month presumptive constitutional period while Respondents work to bring about his removal. Prolonged detention is a separate matter from the execution of removal. Section 1252(g) does not strip the Court of jurisdiction to consider the claims in the Amended Petition. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (construing § 1252(g) as limited to just the three actions themselves – commencing proceedings, adjudicating cases, or executing removal actions – and not sweeping in any claim that could technically arise from the listed actions).

Respondents also suggest that § 1252(b)(9) divests this Court of jurisdiction to review the Amended Petition. Section 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision … to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). Section 1252(a)(5) provides that a petition for review filed with the court of appeals is the "sole and exclusive means for judicial review of an order of removal…" 8 U.S.C.

§ 1252(a)(5). The Court is not convinced these sections preclude judicial review of a post-removal prolonged detention claim. *Cf. Jennings*, 583 U.S. at 293-95 (concluding that § 1252(b)(9) does not present jurisdictional bar to Court's consideration of whether certain statutory provisions require detention without bond hearing); *Mukantagara v. U.S. Dep't of Homeland Security*, 67 F.4th 1113, 1116 (10th Cir. 2023) (holding that § 1252(b)(9) did not bar judicial review of agency decision to terminate plaintiffs' refugee status because it is not a decision to commence proceedings, much less adjudicate a case or execute a removal order); *Ochieng v. Mukasey*, 520 F.3d 1110, 1115 (10th Cir. 2008) (explaining that alien may challenge detention under § 1226(c) through a § 2241 habeas corpus proceeding and that 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) do not apply where alien is not seeking review of an order of removal, but review of his detention).

Finally, Respondents assert that the Court lacks jurisdiction to consider the APA claim because § 1252(a)(2)(B)(ii) precludes judicial review. Under the APA, a court may set aside agency action that "is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The APA does not apply where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)-(2). Section 1252 of the INA strips a court of jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). The Tenth Circuit recently confirmed that § 1252(a)(2)(B)(ii) applies only to discretionary actions and does not remove a court's jurisdiction to resolve questions of nondiscretionary eligibility determinations. *Mukantagara v. Noem*, 164 F.4th 765, 769-74 (10th Cir. 2026).

Respondents argue that Petitioner cannot challenge ICE's discretionary decision to revoke his supervision. Mot. to Dismiss Am. Pet. 9, Dkt. No. 21. For his part, Petitioner argues that he is not contesting ICE/ERO's discretionary authority to detain certain noncitizens; rather, his claim is based on DHS's failure to comply with mandatory regulations. Resp. 11, Dkt. No. 9. As such, Petitioner asserts that courts have jurisdiction to review his claim based on *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Resp. 11, Dkt. No. 9. The *Accardi* doctrine requires an agency to follow the policy and regulations it promulgates. *Jagers v. Federal Crop Ins. Corp.*, 758 F.3d 1179, 1186 (10th Cir. 2014).

The Supreme Court in *Zadvydas* held that § 2241 habeas corpus proceedings remain available for statutory and constitutional challenges to post-removal-period detention. 533 U.S. at 688. It explained:

> Another provision, 8 U.S.C. § 1252(a)(2)(B)(ii) (1994 ed., Supp. V), says that "no court shall have jurisdiction to review" decisions "specified ... to be in the discretion of the Attorney General." The aliens here, however, do not seek review of the Attorney General's exercise of discretion; rather, they challenge the extent of the Attorney General's authority under the post-removal-period detention statute. And the extent of that authority is not a matter of discretion.

*Id.* Petitioner claims that his prolonged detention violates the bounds set forth in *Zadvydas* and agency regulations, and that Respondents have failed to adhere to the process regarding lawful detention pending removal. He does not challenge discretionary decisions. Accordingly, Section 1252(a)(2)(B)(ii) does not strip this Court of jurisdiction to consider Petitioner's habeas claims. The Court thus recommends not dismissing the habeas petition for lack of jurisdiction.

### B. Amended Petition should not be dismissed for failure to exhaust administrative remedies.

Before turning to the merits of the Amended Petition, the Court must also consider Respondents' prudential exhaustion argument. They contend that Petitioner did not allege that he

14

submitted a written request for HQPDU to review his detention, as § 241.13 requires. Mot. to Dismiss Am. Pet. 12-13, Dkt. No. 21. Respondents urge the Court to dismiss the Amended Petition without prejudice, or alternatively, order HQPDU to treat the Amended Petition as the written request for review. *See id.* Petitioner did not squarely address the argument.

The INA mandates exhaustion as to final orders of removal, but it contains no exhaustion provision regarding challenges to preliminary custody or bond determinations. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Although § 2241 does not expressly require a petitioner to exhaust direct appeals before filing a petition for habeas corpus, as a prudential matter, habeas petitioners must generally exhaust available administrative remedies before seeking habeas relief under § 2241. *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *overruled on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Where exhaustion is not statutorily required, "sound judicial discretion governs." *Gonzalez*, 355 F.3d at 1016 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). "A narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile." *Garza*, 596 F.3d at 1203. Notably, the Tenth Circuit has said that challenges to immigration detention under *Zadvydas* "are properly brought directly through habeas" and that "the exhaustion deficiencies we have noted in other respects do not affect habeas jurisdiction over such claims." *Soberanes*, 388 F.3d at 1310.

Courts have split on whether, as a prudential matter, exhaustion of administrative remedies under § 241.13 is required before bringing a habeas petition. *Compare Quintana Casillas v. Sessions*, Civ. 17-01039-DME-CBS, 2017 WL 3088346, *10-11 (D. Colo. July 20, 2017) (concluding as prudential matter that dismissal without prejudice is warranted to follow administrative review process in § 241.13); *Royer v. Holder*, No. 3:12-cv-1319-J-12MCR, 2012

15

WL 6553114, at *3 (M.D. Fla. Dec. 14, 2012) (requiring petition to receive final decision from HQPDU on custody determination before considering habeas petition and dismissing petition without prejudice), *with Pablo Lorenzo v. Bondi*, 2:25-cv-00923-KWR-GJF, 2026 WL 84521, at * 2 (D.N.M. Jan. 12, 2026) (declining to require petitioner to exhaust remedies under § 241.13); *Jimenez Chacon v. Lyons*, No. 2:25-cv-977-DHU-KBM, 2025 WL 3496702, at *5 (D.N.M. Dec. 4, 2025) (finding that petitioner's failure to exhaust administrative remedies pursuant to § 241.13 does not bar habeas relief).

Exhaustion is favored when (1) the "action under review involves exercise of the agency's discretionary power," and (2) the agency procedure at issue allows for "the agency to apply its special expertise." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). An individual's interests weigh heavily against requiring exhaustion in the following three circumstances: (1) when the administrative remedy "may occasion undue prejudice to subsequent assertion of a court action"; (2) when there is doubt that the agency is "empowered to grant effective relief"; and (3) when an administrative body is "shown to be biased" or has predetermined the issue before it. *Id.* at 146-48. Applying the prudential factors in a similar case, Judge Riggs concluded that they neither weigh in favor nor against requiring exhaustion:

> Although the decision to detain and remove involves agency discretion, due process concerns and *Zadvydas* restrict that discretion when a noncitizen is detained beyond the presumptively reasonable period, as is the case here. Further, determining whether future removal is significantly likely does not call for specific "agency expertise." … [T]he parties have presented the Court the relevant facts and documentation concerning Petitioner's likelihood of removal, and thus, the Court is well prepared to address the *Zadvydas* inquiry. Therefore, the factors weighing in favor of exhaustion do not hold particular weight here.

*Pablo Lorenzo*, 2026 WL 84521, at * 3 (internal citations omitted).

The Court finds this analysis persuasive. Here, too, the relevant facts and documentation concerning Petitioner's likelihood of removal are before the Court, so the benefits of

16

administrative exhaustion are not particularly compelling. As discussed *infra*, the record establishes a significant likelihood of removal in the reasonably foreseeable future. Moreover, it is undisputed that Respondents have attempted to remove Petitioner three times and are continuing his detention during the removal process. HQPDU has effectively predetermined the issue before it. Exhaustion with § 241.13 would thus be futile. Requiring exhaustion would also waste scarce administrative and judicial resources and unnecessarily delay resolution of this clear-cut matter. Accordingly, the undersigned recommends waiving the exhaustion requirement in this case and not dismissing the Amended Petition for failure to exhaust. *Cf. Izbitski v. Carnes*, 1:25-cv-00778-JB-JMR, 2025 WL 3754485, at *6 (D.N.M. Dec. 29, 2025) (waiver of exhaustion appropriate where there were no contested facts that would be better investigated by agency, court would not be aided by administrative record, and exhaustion would waste scare judicial and legal resources), *adopted by* 2026 WL 102974, at *6 (Browning, J.) (concluding that waiver of exhaustion was not clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion).

### C. Due process claims should be dismissed.

#### 1. Unlawful prolonged detention claim (Count One) should be dismissed.

As the Supreme Court explained in *Zadvydas*, the habeas court's task is to "ask whether the detention in question exceeds a period reasonably necessary to secure removal." 533 U.S. at 699. Reasonableness is measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* "Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700. Respondents argue that Petitioner cannot meet his burden to show that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. The Court agrees.

17

Petitioner has presented no evidence indicating Respondents are unwilling to remove him or that there are insurmountable barriers to removal. *Cf. Aguilar v. Noem*, Case No. 25-cv-03463-NYW, 2025 WL 3514282, at *4 (D. Colo. Dec. 8, 2025) (explaining that courts have found petitioner's burden met where he shows some impediment precludes removal to country of origin); *Gathiru v. Banieke*, Civil No. 15-4247 (DSD/TNL), 2016 WL 6436621, at *2 (D. Minn. Oct. 27, 2016) (explaining that noncitizen cannot rely merely on passage of time to meet burden; rather, there must be some indication government is unwilling to remove him, or insurmountable barriers exist preventing removal). As for willingness, Respondents attempted on three separate occasions to place Petitioner on a flight to China. Petitioner's self-harm, captured on video, prevented his initial removal. On two separate occasions, Respondents tried to remove him via a commercial airflight, but Petitioner refused to enter the airport, thwarting his removal. Sanchez. Decl. ¶¶ 9, 12, Dkt. No. 21-1. Petitioner did not file a response contesting this evidence.[5] "The risk of indefinite detention that motivated the Supreme Court's statutory interpretation in Zadvydas does not exist when an alien is the cause of his own detention." *Singh v. U.S. Attorney General*, 945 F.3d 1310, 1314 (10th Cir. 2019) (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003)).

Petitioner suggests in his Amended Petition that the travel documentation was not legitimate. In their Motion to Dismiss Amended Petition, however, Respondents submitted a

---

[5] In his Amended Petition, Petitioner admits that he slammed his arm in one of the metal doors and broke it. Am. Pet. ¶ 37, Dkt. No. 20. By way of explanation, he asserts that, after talking to a psychiatrist, he had a nervous breakdown. *Id.* That explanation, however, does not refute that his self-harm actions effectively prevented his removal, whether that was his intent or not. He also states in his Amended Petition that on April 13, he was told to board a civil commercial air flight to China, but when shown a document, Petitioner could see that it was not a formal Chinese official travel document that would permit his entry to China. *Id.* ¶ 39. Petitioner, however, does not dispute that he refused to board the flight on April 13, 2026, or to board a separate flight on April 16, 2026. Unlike in *Singh*, Petitioner failed to contest the key facts necessary to find that he acted to prevent his own removal. *Cf. Singh*, 945 F.3d at 1315-16 (remanding for evidentiary hearing where conflicting statements were made in competing affidavits). This Court therefore can resolve the Amended Petition on the current record without an evidentiary hearing.

Permit for Entry to China in Petitioner's name, valid for three months beginning March 9, 2026. Petitioner did not file a response disputing its authenticity or effectiveness. The Court thus recommends finding that Petitioner waived any argument that the Permit for Entry is not valid, proper, or legitimate authorization to allow his entry back to China.

Consequently, the record reflects that Respondents secured a Permit for Entry, authorizing Petitioner's return to China. Gov.'s Ex. 2, Dkt. No. 21-2. Petitioner is pending removal to China and Respondents are preparing travel arrangements for a fourth removal attempt to China. Sanchez Decl. ¶ 15, Dkt. No. 21-1. Petitioner acted to prevent his own removal on three separate occasions. Petitioner therefore has not met his burden of establishing that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future to shift the burden to the government. Moreover, even if he met that initial burden, Respondents have submitted robust, uncontested evidence showing that there is a significant likelihood of removal soon and Petitioner has caused his own continued detention by acting to prevent the execution of his removal. *Cf. Singh*, 945 F.3d at 1314 ("Section 1231(a)(1)(C) extends the removal period if the noncitizen … 'conspires or acts to prevent the alien's removal.'"). He is not entitled to release. *See* 8 C.F.R. § 241.4(g)(5)(i) ("Release will be denied and the alien may remain in detention if the alien … acts to prevent the alien's removal."). For all these reasons, the Court recommends finding that Petitioner's detention does not offend the Due Process Clause or *Zadvydas* and that Petitioner's first claim for relief should be denied.[6]

---

[6] Section 1231(a)(1)(C) also extends the removal period if a noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure." *Singh*, 945 F.3d at 1314 (quoting 8 U.S.C. § 1231(a)(1)(C)). The initial motion practice focused on whether Petitioner refused to complete the travel documents and whether the delay by the Chinese government in failing to issue the travel documents, despite Respondents' efforts to obtain them, is enough to justify the delay. Petitioner pointed to perceived flaws in William S. Shaw's declaration and asserted that, by failing to offer translation of the documents, Respondents did not provide Petitioner with the opportunity and tools to cooperate through an interpreter or counsel. *See* Resp. 3-7, Dkt. No. 9. By the time of the Amended Petition, however, the more developed record revealed active attempts by Petitioner, captured on video, to engage in self-harm that prevented his removal, as well as refusals to board airplanes on two additional occasions. The

19

### 2. Due process claim (Count Two) should be dismissed.

Petitioner asserts in his Amended Petition that Respondents have not provided him or his counsel evidence of authorization or travel documentation from the Chinese government that would lawfully allow his entry back into China and that their failure to do so violates due process. Am. Pet. ¶¶ 50-52, Dkt. No. 20. As aforementioned, Respondents attached to their Motion to Dismiss the Amended Petition a copy of the Permit for Entry to China in Petitioner's name and valid for three months, beginning March 9, 2026. Gov.'s Ex. 2, Dkt. No. 21-2. Petitioner did not respond to the Motion to Dismiss Amended Petition or otherwise dispute that the Permit for Entry is proper, valid, and authorizes Petitioner's entry into China. Petitioner's assertion that Respondents continue to refuse to provide proper travel documents to him is therefore without a basis. Because Respondents established that travel documents were obtained for Petitioner, and will be obtained again, if necessary, Petitioner should not be released. *See* 8 C.F.R. § 241.4(g)(3). The Court recommends finding, based on the current record, that Respondents did not violate Petitioner's due process rights based on the failure to possess and provide to Petitioner legitimate travel documentation for him to return to China.

### V. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** (i) the *Petition for Writ of Habeas Corpus* (**Dkt. No. 1**) be **denied as moot**; (ii) Respondents' *Motion to Dismiss Petition for Writ of Habeas Corpus* (**Dkt. No. 8**) be **denied as moot**; (iii) Respondents' *Motion to Dismiss Petitioner's First Amended Petition for Writ of Habeas Corpus* (**Dkt. No. 21**) be **granted**; and (iv) the *First Amended Petition for Writ of Habeas Corpus* (**Dkt. No. 20**) be **denied without prejudice**.

---

Court's analysis thus shifted to the alien's own acts to prevent removal as the basis for extending his detention lawfully, rather than on whether he cooperated with efforts to obtain travel documents.

**SO RECOMMENDED.**

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE